CHAPMAN, *Appellant*, v. McILWRATH.

1. **Equity**: PRACTICE. In equity cases the Supreme Court will defer to some extent to the trial courts in their findings on matters of fact.

2. **Presumption of Honesty.** Where a transaction is as compatible with honesty as with dishonesty, it will be presumed to be honest.

3. **Insurance Policy**: ASSIGNMENT. A parol assignment of a policy accompanied by delivery will vest in the assignee an equitable right, at least, to the proceeds.

4. ———: ———: HUSBAND AND WIFE. A husband may make such a transfer to his wife.

5. ———: ———: ———. As against creditors such a transfer to a wife will be valid, though made without consideration, if it is no more than a reasonable provision for her, unless it was made with intent to defraud the creditors.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

On the 9th day of December, 1869, Michael L. Mc-Guire, being then free from debt and contemplating marriage, took out a policy of insurance on his life, payable in twenty years, or sooner if he should sooner die, to himself, his executors, administrators or assigns. On the 20th day of February, 1870, he married and immediately thereafter delivered the policy to his wife, to be her exclusive property as she alleged. She retained the policy, and received and kept the receipts for premiums paid from time to time, until the death of her husband on the 15th day of March, 1873, shortly after which she delivered the policy to the defendant, McIlwrath, who had been appointed administrator of McGuire's estate. McIlwrath collected the policy, used a portion of the proceeds to pay debts of the estate, and in his accounts as administrator charged himself with the balance as assets of the estate. He afterward applied to the probate court for a credit for this balance, alleging that it was the money of Mrs. McGuire, and not of the estate. On the proofs produced the court granted the application. On the 16th day of July, 1875, he made final settlement.

At the time of his death McGuire was surety on the bond of Wm. W. Walden, as guardian and curator of the plaintiff Chapman. McGuire had signed this bond on the

20th day of July, 1871. On the 21st day of October, 1873, Walden made a settlement of his accounts as curator, by which it appeared that he was indebted to his ward. This indebtedness was never paid, and Walden and the other surety on his bond being insolvent, plaintiff brought this suit, as a creditor of the estate of McGuire, to set aside the final settlement of that estate on the ground of fraud. Defendant had judgment and plaintiff appealed.

*James M. Davis* and *Lewis A. Chapman* for appellant.

*B. B. Gill* and *A. S. Harris*, for respondent.

RAY, J.—The pleadings in this case were as follows: The petition states that on the 20th day of July, 1871, one William W. Walden was appointed, qualified and gave bond as the guardian and curator of appellant, who was and continued to be a minor until the 1st day of September, 1874; that said Walden gave bond as such guardian and curator in the sum of $1,200, with the condition that said Walden would faithfully discharge his duties as such guardian and curator; that the sureties on said bond were one John D. Sherman and the said Michael L. McGuire, deceased; that on the 21st day of October, 1873, said Walden, as such guardian and curator, made his first and only settlement in the probate court of Livingston county, by which it appeared that said Walden had of appellant's estate the sum of $592.87 of the date of July 24th, 1872; that on the 15th day of March, 1873, the said Michael L. McGuire died, and the respondent William McIlwrath was appointed and qualified as the administrator of said McGuire's estate; that respondent took charge of said estate, and on the 29th day of April, 1874, he made his first annual settlement, on which settlement he charged himself as such administrator with $4,648 as the proceeds of a certain insurance policy on the life of his intestate. By said settlement respondent admitted that he had in his hands as

such administrator, the sum of $3,666.65; that afterward, about the 15th day of February, 1875, respondent secretly appeared in the probate court and made affidavit that said life policy was intended to be for the benefit of said Michael L. McGuire's widow; that at said time the said widow of said deceased McGuire was a near relative of respondent, and that said respondent was acting in said matter as the attorney and agent of said widow; that respondent knowingly and fraudulently, represented to said probate court, that said sum of $4,648, proceeds of said life insurance policy, did not belong to said estate, but to the said widow, which representation was in conflict with his sworn inventory and first settlement, and was false; that said representation was made for the purpose of benefiting said respondent's relative and defrauding plaintiff out of the amount due by said Walden, and for which said estate was bound, and the whole of which amount due appellant said estate would have to pay, as said Walden and John D. Sherman were totally insolvent; that after said respondent, as administrator of said estate, had inventoried and charged himself with the proceeds of said life insurance policy, he paid debts against the estate of said deceased McGuire to the amount of $1,000, and paid them all out of the proceeds of said life insurance policy; that the probate court, believing the representations to be true, ordered that respondent have credit for said money so received from the insurance on said life policy; and on the 16th day of July, 1875, defendant made final settlement and was discharged; that he did this while the appellant had a suit pending in the circuit court of Livingston county, Missouri, on said bond, and of which suit respondent had notice; that said suit on the bond was dismissed because the circuit court had no jurisdiction, and appellant commenced this suit; that said policy was made payable to said Michael L. McGuire, and his legal representatives, and that respondent, as administrator, rightfully received the proceeds; that without the proceeds of said policy the assets of said estate

were insufficient to pay the claims against said estate in the first, second and third classes; that respondent's action in the matter was intended to defraud appellant.

Respondent's answer denies all knowledge or information sufficient to form a belief as to guardianship or curatorship of said Walden, or that he ever gave bond or made settlement; denies that he ever appeared in the said probate court, or ever secretly transacted any business, but alleges that all his conduct as administrator and all of his statements as such were open and fair, and that his final settlement and discharge as such administrator were made with and by said court and said court was fully advised of all the facts affecting the title to said policy, and of all the acts and transactions of the respondent as such administrator; that the said policy of insurance was effected by the said M. L. McGuire while he and Mary McGuire (his widow) were engaged to be married to each other, and that the object and purpose of said Michael in effecting such policy was, and he so stated to the said Mary during their engagement, to provide for her as his intended wife a suitable fund for her support and maintenance as his wife and widow in case she should survive him, said fund to be held by her for her sole and separate use; and respondent says that in pursuance of and in order to secure the accomplishment of his aforesaid object and purpose he did, immediately upon his marriage with said Mary, assign by delivery the said policy to her with the intent of investing her, to her sole and separate use, with the exclusive right and title thereto, and to all the proceeds and assets thereof; that on the death of said McGuire, she (Mary McGuire), the widow, placed the said policy in the hands of the respondent for him to collect the proceeds of said policy, and that he received the said policy with the understanding and agreement between them, that as between her and respondent she was the owner of such policy and lawfully entitled to the proceeds thereof; that upon the aforesaid delivery to the said Mary by way of assignment thereof

to her, the right and title thereto vested in her to her sole
and separate use, and that since the collection of the money
thereon by him, the right and title thereto vested in her
to her sole and separate use.

The reply is a denial of each and every material alle-
gation of new matter in the said answer contained.

It will be observed that the object of this suit is to set
aside the final settlement of defendant as administrator of
the estate of McGuire on the ground of fraud.   Defendant
was the administrator of McGuire, who was one of the
sureties of William W. Walden, who was guardian and
curator of plaintiff.   The bond of the curator was dated
July 20th, 1871.   By the first and only annual settlement
of said Walden made October 21st, 1873, it is shown that
said curator was indebted to his ward in the sum of
$592.87.

On the hearing of the cause now before us, the circuit
court found in favor of the defendant, and this finding
1. EQUITY: prac-  should be conclusive against the plaintiff un-
tice.        less it be made to appear that said finding
was not sustained by the evidence.   We have examined
the evidence carefully, and after such examination find no
cause to arrive at any other conclusion than that reached
by the trial court.   And it is our constant practice to defer,
to some extent, at least, to the trial courts in their findings
on matters of fact.   *Chouteau v. Allen*, 70 Mo. *loc. cit.* 336.
If there was no fraud, that must end the case and prevent
the final settlement from being set aside.   But notwith-
standing we fully concur with the trial court in its findings,
we think it proper to offer some reason why we regard
that finding correct on the question of fraud, and also cor-
rect on other grounds.

The alleged fraud is said to consist in these facts, that Mc-
Ilwrath, the defendant, who, as before stated, was McGuire's
2. PRESUMPTION OF  administrator, having charged himself in his
HONESTY.         inventory, as such administrator, with a cer-
tain policy of insurance effected on the life of said Mc-

Guire on December 9th, 1869, afterward went before the probate court and obtained an offset to the amount of said policy, by making an affidavit that the policy was really the property of Mrs. McGuire, the widow of his intestate, and not the property of said intestate. Upon this showing the probate court gave the administrator tne credit asked, and thereupon the settlement which is charged to be fraudulent (and which took place after due legal notice) was made. It does not seem to us, that there was anything fraudulent in the administrator taking the course he did. He may have made a mistake in his duties or as to the law of the case ; but this should not be laid at his door as fraud, unless upon better grounds than we find in this record. And it is well settled in this State, that where a transaction is as well compatible with honesty as dishonesty, that it shall be presumed to be the former and not the latter. *Dallam v. Renshaw*, 26 Mo. 533.

But we do not think that McIlwrath made any mistake, either in law or fact, in taking the course and making the affidavit he did. It appears in evidence, and there is no controversy on the point, that said McGuire, just before he effected the said policy of insurance on his life, became engaged to be married to Mrs. McGuire, now his widow. After he was thus engaged, he told her he had effected a policy of insurance on his life for her special benefit, in contemplation of marriage. As before stated, this policy was effected December 9th, 1869, and was made payable to said McGuire, his executors, administrators or assigns. Said policy was to be paid December 9th, 1889, or at the death of the insured if he should die before that period. Immediately after the marriage occurred, which took place February 20th, 1870, the said McGuire delivered the policy of insurance to his then wife, saying to her that it was his intention, by delivering the policy to her, to invest her with the title to said policy, to her own sole, separate and exclusive use ; and with the sole right to the proceeds thereof, as a means of support in case of his death

and her widowhood. After the policy was delivered to Mrs. McGuire, she kept it in her exclusive control and possession, as well as the receipts for the premiums paid from time to time, until the death of her husband, when she delivered them to McIlwrath, the administrator and defendant.

The policy of insurance on the life of said McGuire, as assignable by parol, and by mere delivery, if such was 3. INSURANCE POL- the intention of the said McGuire; and of ICY: assignment. this intention there can be no doubt from the evidence. Policies of insurance are choses in action, and like any other choses in action they may be assigned by delivery. *Boeka v. Nuella*, 28 Mo. 180; *Bennett v. Pound*, 28 Mo. 598. No writing is necessary, at least so far as vesting the equitable interest therein is concerned. *St. John v. Am. Mut. Life Ins. Co.*, 13 N. Y. 31. Mr. Phillips states: " Policies are usually assigned in writing: but a merely verbal assignment and delivery of the policy, gives to the assignee an equitable right to the proceeds, where the policy itself contains no provision to the contrary." 1 Phillips on Ins., (4 Ed.) 60, § 80; May on Ins., § 389.

It was the original and legitimate purpose of life insurance to provide for the widow and orphans, on the death 4. ____: ____: of those upon whose exertions while living, husband and wife they depended for support. Reynolds on Life Ins., chap. 1; Ellis on Life and Fire Ins., 99, § 2. And the possession of the policy is *prima facie* evidence of the right to receive the insurance money. Bliss on Life Ins., 546. And, subject to the claims of all creditors to avoid a transfer made in fraud of their rights, any act which indicates an intention to transfer the interest in the policy, whether voluntarily or for a consideration, will be held good, though no possession is given of the policy or notice to the company. Ib., 547. *Prima facie*, the wife's possession is that of the husband, and in equity you may show the wife's equitable ownership, even of a chattel, is the gift of her husband; not considering for the present

the claims of creditors. And there is no doubt that in contemplation of equity, husband and wife can contract with and convey to each other ; 1 Bishop on Mar. Women, § 719 ; *Morrison v. Thistle,* 67 Mo. 597; 2 Story Eq., §§ 1368, 1370 ; and *Terry v. Wilson,* 63 Mo. 498, recognizes the same doctrine.

In the case before us, the assignment of the policy by the husband to the wife occurred long before the husband signed the bond of Walden, as one of his sureties. At the time of delivering the policy to his wife, it does not appear that McGuire had any existing creditors, and if he did not have, the gift and delivery of the policy, being but a reasonable provision for the wife, could not be avoided by any subsequent creditors without proof of an intent to defraud them at the time the policy was delivered; and McGuire died March 15th, 1873, long before the annual settlement of Walden, which occurred October 21st, 1873.

At the utmost all the plaintiff could claim, under the rule announced in *Pullis v. Robison,* 73 Mo. 201, even if defendant's final settlement be set aside for fraud, would be the amount of the policy produced by premiums paid by McGuire after he became insolvent.

These remarks are of course based on the theory that the assignment of the policy as before stated, was a valid one in equity if not at law, and such assignment is to be treated as if the husband, instead of delivering to his wife, had caused the policy to be issued directly to her, and in this light we feel inclined to regard it. Bliss on Life Ins., (2 Ed.) 544, and cases cited.

For these reasons we must affirm the judgment. All concur, except NORTON, J., who is absent.