ED. S. HUBBARD, Appellant, v. OLIN KIES, JOSEPH
F. NOLL and LOGAN G. PRENTISS, Trustee,
Respondents.*

Kansas City Court of Appeals. May 15, 1925.

1. **ASSIGNMENTS FOR BENEFIT OF CREDITORS: Choses in Action
May be Assigned.** Under a general assignment for the benefit of
creditors, choses in action can be assigned as well as property sus-
ceptible of, and actually reduced to, possession.

2. **INSURANCE: Vested Interest: Where Right to Change Beneficiary
is Reserved, Beneficiary Acquires no Vested Interest in Policy.**
Where the right to change the beneficiary in policy of insurance is
reserved, the wife named as beneficiary acquires no vested interest
therein.

3. **ASSIGNMENTS FOR BENEFIT OF CREDITORS: Insurance Pol-
icies Held to Have Passed to Assignees under Terms of General As-
signment for Benefit of Creditors.** Where debtor, under a general
assignment for the benefit of creditors, agreed to transfer "all per-
sonal property of every nature and wherever situated," which was
listed "as far as possible" in schedule attached, *held* insurance
policies having cash surrender values, though not listed in schedule
or in exemptions, passed to assignees under the terms of such as-
signment.

*Corpus Juris-Cyc. References; Assignment for Benefit of Creditors,
5 C. J., p. 1179, n. 52; p. 1183, n. 5. Life Insurance, 37 C. J., p. 580, n.
52.

Appeal from the Circuit Court of Harrison County.—
*Hon. L. B. Woods,* Judge.

AFFIRMED.

*A. S. Cummings* for appellant.

*Frisby & Frisby* for respondent.

ARNOLD, J.—Plaintiff brings this action to recover
an alleged balance of $2800 due on a contract of assign-
ment made by him to defendants as assignees for the

benefit of creditors. The record discloses the following facts.

Plaintiff, a farmer engaged in extensive operations, becoming financially involved beyond his ability to pay, entered into negotiations with his creditors which resulted in the transfer and assignment on November 4, 1921, of all his land and personal property, by written contract, to defendants as trustees for the benefit of all his creditors. In consideration of such transfer and assignment, his creditors agreed to release plaintiff from all liability for any unpaid balance of their claims against him, and it was further agreed that the said trustees were to pay him $3500 in cash from the first money received from the sale of said properties. As a part of said contract there was a schedule listing the personal property assigned ''as far as possible.'' A few specified items were reserved which are not involved in this controversy. At the sale of the personal property under the assignment there was realized a sum in excess of $7,000, and later sales brought in more money. Of this sum plaintiff received at the hands of the trustees $700, no further payments were made to him and he brought this suit to recover $2800 remaining of the $3500 to be paid him as specified in the contract.

The trustees, in their answer, allege that plaintiff withheld certain assets covered by the assignment agreement.

At the time of the assignment there were in existence two current life insurance policies of $5,000 each, issued by the Kansas City Life Insurance Company on the life of plaintiff Hubbard, not yet paid up and in which plaintiff's wife and son were named as beneficiaries. These policies had a cash surrender value at the date of said contract of assignment of $1029.29 and $2057.85, respectively. These policies were not specifically mentioned in the contract nor were they mentioned in the negotiations leading up to the contract of assignment. The insured being unable to pay the premiums

last maturing before the assignment, his wife advanced $567.50 to pay them.

A month or two after the assignment plaintiff applied to defendant Prentiss, one of the trustees and cashier of the Harrison County Bank which was the heaviest creditor, to have the policies cashed through said bank. One of the policies was cashed and although the cancellation receipt for the other had been signed by Hubbard and his wife, that policy was never surrendered but remained in force. While waiting for the returns on the surrendered policy plaintiff borrowed from defendants Noll or Prentiss, or from the trustees, the amount he was to receive from the surrendered policy and when the draft therefor was received it was turned over to Noll, Prentiss, or the trustees. Plaintiff claimed that he was thereby repaying the loan above mentioned, but the position of defendants is that the amount was for the benefit of creditors, pursuant to the assignment and that the sum advanced to plaintiff was as part payment on the $3500 due him under the contract of assignment. Defendants' position rests upon the theory that the policies, or their cash surrender value, passed by the assignment.

The insurance policies each contained the provision, now customary, that the assured, without the consent of the beneficiary, could receive any benefit thereunder and exercise every right and enjoy every privilege conferred upon the assured by the policy. Such rights and privileges, so far as applicable to this case being the right, with the consent of the company, to assign the policy or change the beneficiary to any person authorized by law, by filing with the company a written request therefor, such change to become effective upon its acceptance by the company by proper indorsement. No request for the assignment or for change of beneficiary of either policy was made to the insurance company. One policy was cashed by the combined efforts of plaintiff and his wife and a receipt for the amount of the sur-

render value was issued therefor and relinquishment of the other was executed by them but the surrender was never consummated.

The petition formally alleges the facts as stated above, admits receipt of $700 paid by defendants under the agreement and prays judgment for $2800. The assignment and trust agreement is appended to the petition as exhibit "A." This exhibit first describes the real estate involved in the assignment but not involved in this controversy. The second clause, around which this legal battle revolves, is as follows:

"The said Ed S. Hubbard agrees to assign, transfer and deliver to the parties of the second part, or their agents, as trustees, as aforesaid, all his personal property of every nature and wherever situated, consisting of live stock, farm implements and machinery, hay, grain and feed, notes, bonds, moneys, accounts, and all other personal property whatever, said personal property being listed as far as possible in Schedule B, which is hereto attached and made a part hereof, said second parties to have immediate possession of all said personal property and the control over same. There is excepted from this clause the following personal property, to-wit: One Chandler automobile, all household furniture and personal effects, all poultry on the farm, one mare and colt, one sow and eight pigs, six head of shoats, one pony and one whiteface heifer."

Schedule A, attached to the agreement, lists the creditors, nature of claim, date, amount and when due. Schedule B contains a purported list of personal property assigned, the insurance policies above mentioned not being listed therein.

The answer, after admitting the written agreement set out in the petition, is first a general denial; further it states that plaintiff refused and neglected to turn over and deliver to defendants all his personal property as per agreement; that plaintiff failed and refused to de-

liver to defendants a certain policy of life insurance issued by the Kansas City Life Insurance Company upon the life of plaintiff, which had a cash surrender value on November 5, 1921, of $2057.85, and certain stock in corporations of the reasonable vlaue of $1,000. As further answer it is alleged that defendants, at various times, offered to pay plaintiff the balance due him on the contract of assignment if he would turn over to them the life insurance policy above mentioned. The answer further alleges that the property retained by plaintiff and belonging to defendants under the terms of the agreement exceeds in value by $1450 the amount which defendants were to pay plaintiff under the agreement. And by way of counterclaim defendants pray judgment against plaintiff in the sum of $1450 and costs.

The reply is a general denial. Upon the issues thus made a jury was waived, and the cause went to trial to the court.

The finding of the court was that according to the terms and provisions of the contract of assignment and under the provisions and conditions of the two certain policies of insurance mentioned in the pleadings and evidence, the plaintiff agreed to transfer said policies to defendants as trustees; that said policies were personal property within the meaning of said contract and passed to defendants under the terms thereof; that defendants have paid plaintiff $700 in cash; that plaintiff has retained and refused to deliver to defendants the said insurance policies of the admitted value of $2057.85 and $1029.95, respectively; that plaintiff has received and retained the total sum of $3787.80 belonging to defendants as trustees. Judgment was entered accordingly in favor of the trustees upon their counterclaim in the sum of $287.80.

Motions for new trial and in arrest of judgment were unavailing and plaintiff appeals.

For his first assignment of error plaintiff declares the court erred in finding that the two insurance policies

219 Mo. App.—26.

were personal property of plaintiff, at the date of the assignment, within the meaning of the word "property" as used in the assignment. It is also charged that the court erred in failing to give credit for the $567.50 paid by plaintiff's wife to prevent a lapse of the policies. But as this item is nowhere mentioned in the pleadings, it is not an issue in the case and demands no discussion. The only question for determination in this appeal is whether or not, under the contract of assignment set up in the pleadings and detailed in the evidence, the two insurance policies passed to the defendant trustees, for the benefit of the creditors.

It is insisted by plaintiff that the said policies were not property within the accepted meaning of that term and therefore did not pass to the defendant trustees under the terms of the contract of assignment. The contrary view is held by defendants. The general rule is stated as follows in 5 Corpus Juris, p. 1183, par. 12:

"An assignment for the benefit of creditors generally passes to the assignee the assignor's interests in policies of fire, accident, and life insurance, provided this is consonant with the language of the policy and the intention of the assignor in procuring the policy, and provided the policy is not by its terms nonassignable. However, a policy of life insurance that has no surrender or pecuniary value at the date of the assignment does not pass to the assignee. . . ."

Of course this rule presupposes an assignment of the policy, and in determining whether the contract of assignment for the benefit of creditors involved in this case was, in fact, an assignment of the policies, it is necessary to examine and construe the policies as well as the contract. Clause 6 of the general provisions of the two policies provides: "This policy is issued with the understanding that with the consent of the company the insured may assign same or change the beneficiary to any person authorized by law, by filing with the company a written request therefor."

Clause 9 is as follows: ''The insured may, without the consent of the beneficiary, receive any benefits hereunder and exercise every right and enjoy every privilege conferred upon the insured in or by this policy.''

Table No. 2 of the policy provides that at the eleventh year of the life of the policy (No. 53298) the cash surrender or loan value is $2057.85. There is no dispute as to this item and it is also agreed that this policy had a cash surrender value as above indicated, at the time of the assignment, and that plaintiff's interest therein was assignable; that under its terms plaintiff could have enforced the payment to him of that sum without the consent of the beneficiary. There rested upon the Kansas City Life Insurance Company the obligation to pay a stipulated sum under the terms of the policy, or failing to pay on proper demand, there rested in plaintiff a contract right, or, in other words, a chose in action. It is said in 5 Corpus Juris, p. 1179, par. 252, ''b;'' ''Under a general assignment for the benefit of creditors, the debts due to the assignor pass to the assignee, and likewise choses in action.'' This rule is reasonable and proper and it follows that choses in action can be assigned as well as property susceptible of, and actually reduced to, possession. Courts of law, in considering the amount of property involved in contracts, will protect the assignment of a chose in action. This general rule is supported in this State. [Eppright v. Nickerson, 78 Mo. 482; St. George's Church Soc. v. Branch, 120 Mo. 226.]

It must also be held that where the right to change the beneficiary is reserved, the wife named as beneficiary acquires no vested interest therein. [See cases last above cited.] It remains only to be determined therefore whether the contract of assignment herein embraced plaintiff's rights under the insurance policies in question. It is not disputed that the contract must be construed as a whole and the intention of the parties thereby determined.

Referring to the second article of the assignment contract, above set out, it is noted Hubbard agrees to assign, transfer and deliver to the trustees "all his personal property of every nature and wherever situated, consisting of livestock, farm implements and machinery, hay, grain and feed, notes, bonds, moneys, accounts, and all other personal property whatever, said personal property being listed as far as possible in Schedule B, which is hereto attached and made a part hereof, said second parties to have immediate possession of all said personal property and the control over same. There is excepted from this clause the following personal property, to-wit: One Chandler automobile, all household furniture and personal effects, all poultry on the farm, one mare and colt, one sow and eight pigs, six head of shoats, one pony and one whiteface heifer."

It is evident the list of exemptions does not include the insurance policies in question. Plaintiff declares the clause in the contract to the effect that Schedule B lists all his personal property "so far as possible" possesses the virtue of excluding the insurance policies because they were not listed. We think there is no merit in this contention. Plaintiff, in support of his position, cites the leading case of Bock v. Perkins, 139 U. S. 628, and cases therein cited.

We have examined these cases and find therein a counterpart of the case at bar, with the distinction that there was no modifying clause in the assignment in the cases cited, the assignment containing the clause "all the lands and all the personal property of every name and nature whatsoever of the said party of the first part, more particularly enumerated in the schedule hereto annexed, marked Schedule A." In the Bock case, the schedule, while purporting to list all the personal property assigned, did not embrace a stock of goods worth $10,000. It was held that Schedule A, being made a part of and attached to the general assignment, so modi-

fied the same that the said stock of goods did not pass to the assignee.

It must be concluded that Schedule B does not purport to cover all of plaintiff's personal property assigned. The said schedule lists "approximately 200 hogs," and "35 to 40 cows." This listing is uncertain and indefinite, but clause 2 of the contract is definite as to the personal property assigned, viz., "all his personal property of every nature and wherever situated," etc. The insurance policies which we hold to be choses in action, not being listed in the exemptions, must be held to have passed to the assignees under the terms of the assignment.

We fail to find reversible error in the findings of the court, the judgment is for the right party and is affirmed.

*Bland, J.,* concurs; *Trimble, P. J.,* absent.