INDUSTRIAL LOAN & INVESTMENT CO., APPELLANT, v. THE MISSOURI STATE LIFE INSURANCE CO., RESPONDENT.*

Springfield Court of Appeals. March 3, 1928.

*Corpus Juris-Cyc References: Attachment, 6CJ, section 3, p. 30, n. 11; section 353, p. 197, n. 93; section 377, p. 206, n. 82; Executions, 23CJ, section 48, p. 327, n. 25; Statutes, 36 Cyc, p. 1119, n. 36; p. 1121, n. 42.

*Fred Moon* for appellant.

*Jourdan & English* and *Barbour, McDavid & Barbour* for respondent.

BAILEY, J.—This is an action in two counts to recover the cash surrender value of a life insurance policy issued to one Louis H. Mehaffie by defendant company. In the first count plaintiff claims as assignee of the purchaser at an execution sale of said policy. The levy and sale were based on a judgment and special execution in an attachment suit brought by this plaintiff against the said Mehaffie. In its second count plaintiff claims to be the legal holder of said policy of insurance by reason of the fact that it acquired the same as a result of the policy being in its possession as a pledge or collateral to a loan made by it to the said Mehaffie. The answer was a general denial. Judgment was for defendant on both counts and plaintiff has appealed. An opinion was rendered in this case at the last term of this court and a motion for rehearing sustained.

The facts necessary to an understanding of the case may be stated as follows: The policy in question was issued by defendant, the insurer, to Louis H. Mehaffie, the insured, July 29, 1920, naming as beneficiaries his "executors, administrators or assignees." According to the terms of the policy it matured in twenty years but had a cash surrender value on the 29th day of July, 1924, amounting to $1090; at that time, among other options, the insured had the right to "surrender this policy at the home office of the company for its cash value;" said option to be exercised within the period of thirty-one days after the due date of the premium and if such option were not exercised within that period of grace, the insurance would automatically continue as term insurance.

No question is raised concerning the indebtedness of Mehaffie to plaintiff and the proof is that the indebtedness amounted to more than the surrender value of the insurance policy. An attachment

suit, based on an allegation of nonresidence, was brought by plaintiff against Mehaffie and the writ issued October 31, 1923; the sheriff executed the writ November 16, 1923, by levying upon and seizing, among other things, the insurance policy in question; service was had by publication and, on trial before the court, January 19, 1924, judgment was for plaintiff with special execution against the contents of a lock box and this particular insurance policy; by virtue of said special execution the sheriff sold the insurance policy February 4, 1924, to W. N. George for the sum of twenty-five dollars; July 5, 1924, a letter was written to defendant insurance company by Mr. Moon, as attorney for W. N. George, advising said company that W. N. George had purchased the Mehaffie insurance policy at public sale and that he desired to collect the cash surrender value and asked what papers the company would require for that purpose. On the 16th day of July, 1924, defendant insurance company advised Mr. Moon by letter that they would be willing to pay the cash value upon receipt of a certified copy of the court proceedngs under which the sheriff's sale was made, together with the bill of sale and a release signed by the insured and W. N. George, and a surrender of the policy. It stands conceded that the policy was surrendered and demand made on defendant for the cash surrender value within the period of grace, by Mr. George.

The insured, Louis H. Mehaffie, was, at the time, a fugitive from justice and it is a fair inference from the evidence that his signature to a release was, on that account, impossible to procure. Mr. George testified that, "after the defendant company declined to pay me the cash surrender value on that policy in August, 1924, I assigned it by delivering it to the Industrial Loan & Investment Company;" (the latter being the plaintiff herein) that in reality he was representing plaintiff, as an officer of the company, when he purchased the insurance policy at the sheriff's sale.

The principal point briefed and argued by plaintiff is in relation to the validity of the attachment proceedings and execution sale of the insurance policy. The specific question as to whether or not an insurance policy having a cash surrender value is subject to attachment and sale under execution seems never to have been decided by the appellate courts of this State. The policy in this case was what is known as a "twenty pay life," and was seized under attachment prior to its maturity and at a time antedating the end of the policy year, when the insured, under the terms of the policy, had the option of taking the cash surrender value by notifying defendant and delivering the policy. Since the suit by attachment is purely statutory, the validity of the attachment must be considered in the light of our statutory law. Section 1743, Revised Statutes 1919, provides that, "Under an attachment, the officer shall be authorized

to seize, as attachable property, the defendant's account books, accounts, notes, bills of exchange, bonds, certificates of deposit and other evidences of debt, as well as *his other property, real, personal and mixed.*"

It will be noted that this statute first enumerates certain specific property subject to attachment and follows such enumeration with two general clauses. The first general clause is, "and other evidences of debt." We think the rule of *ejusdem generis* would apply to that clause so that the general clause would be limited to "evidences of debt" of like kind and character to those specifically mentioned. "General words in a statute do not explain or amplify the particular term preceding them but are themselves explained and restricted by the particular terms." [Regan v. Ensley, 222 S. W. 773, 283 Mo. 297.]

It is too plain for argument that the option of the insured to elect to take the surrender value of an insurance policy is not an evidence of debt at least until the option is exercised. Since the option had not been exercised at the time of the levy in this case the policy did not fall within the statute insofar as being an evidence of debt.

Referring to the second general clause, shown in italics, it is apparent that the general words there used were never intended to be restricted by the preceding particular words relating to evidences of debt. The latter clause refers to "real, personal and mixed" property and could not be circumscribed by reference to a particular class of purely personal property. Where an act of the legislature, containing general words following particular words, shows a clear intent to go beyond the class specifically mentioned, the rule of *ejusdem generis* does not apply. [State v. Smith, 233 Mo. 242, 1. c. 257, 135 S. W. 465.]

It follows that the insurance policy in this case may be construed as attachable under the statute only upon the theory that it is personal property under the general clause last referred to. Is the option of the insured to take the cash surrender value "property?" This right, if property, is incorporeal, but certainly something of value. Property is *"nomen generalissimum* and extends to every species of valuable right and interest." [McAllister v. Pritchard, 230 S. W. 66.] It is further held that, "In law and in the broadest sense 'property' means 'a thing owned,' and is, therefore, applicable to whatever is the subject of legal ownership. It is divisible into different species of property, including physical things, such as lands, goods, money; intangible things, such as franchises, patent rights, copyrights, trade-marks, trade names, business good will, rights of action, etc. In short it embraces anything and everything which may belong to a man and in the ownership of which he has a right to be protected by law." [Ludlow-Saylor Wire Co. v. Woll-

brinck, 205 S. W. 196, l. c. 198; State ex rel. v. Barnett, 180 S. W. 458, l. c. 460.]

The appellate courts of this State have construed life insurance policies having a surrender value to be property. In the case of Hubbard v. Kies, 271 S. W. 844, it was held that in an assignment for the benefit of creditors which contained a general clause, "all other personal property," a life insurance policy, having a cash surrender value and containing an assignment clause, was property and included in the assignment although not specifically mentioned or referred to therein. It is of course, self-evident that, if the right to exercise the option is purely personal to the insured and cannot therefore be exercised by a third person, then the right to elect to take the surrender value of an insurance policy would be so uncertain and contingent in its nature that it could hardly be considered a thing of value in the hands of a third person and consequently would not be property such as would sustain an attachment, at least prior to the time the insured may himself have exercised the option. However, our courts have held the right to exercise the option is not purely personal. It has been held that a life insurance policy, such as we are considering, may be pledged to secure a debt and that the pledgee, although having acquired possession of the policy prior to the date when the insured had the option to take its surrender value, could foreclose on the pledge and thereupon exercise the option by surrendering the policy to the insurance company after the pledgor's right to the surrender value had matured and would thereupon be entitled to the proceeds to be applied on his debt. [Cornell v. Ins. Co., 179 Mo. App. 420, 165 S. W. 858.]

The right of the assignee of a life policy to convert it into a paid-up policy of insurance for her own benefit, by exercising at the proper time the insured's option, has likewise been recognized. [Bush v. Block and Titus, 193 Mo. App. 704, 187 S. W. 153.]

In an early case our Supreme Court held that a life insurance policy was a chose in action and as such was assignable by mere delivery of the policy to a person having an insurable interest. [Chapman v. McIlwrath, 77 Mo. 38, l. c. 45.]

It would seem that under these rulings a life insurance policy, such as we are considering, is property within the meaning of the general clause in our attachment statute. The general rule elsewhere, however, is contrary to this view. In most jurisdictions, where this question has arisen, a distinction is made between the right of the insured to elect to take the cash surrender value as an incident to the surrender or cancellation of a policy and those cases in which, according to the terms of the policy, the money or a considerable portion of it is to be repaid insured in his lifetime as an endowment feature. This distinction is clearly shown in the case of Talcott v.

Field, 34 Neb. 611, 52 N. W. 400, where it is held that the amount due the insured at the end of the endowment period could be reached by his creditors. In the case of Columbia Bank v. Equitable Life Assurance Society, 80 N. Y. Sup. 428, it was held that where a tontine insurance policy provided that it should have no surrender value until the completion of the tontine dividend period, that the policy was not subject to attachment before that time arrived. It was also held that:

"When the right to receive the money is in existence, the demand then exists, and that demand would be subject to attachment; but the right to determine is not such a demand. The election preceded the existence of a cause of action against the defendant, as it could not have discharged its obligation until the legal holder of the policy had exercised the right to elect. A tender of the cash value of the policy on the completion of the tontine dividend period would not have discharged the defendant unless the legal holder of the policy had elected to accept that option."

The Columbia Bank case seems to be the leading case on this subject and has been followed in a number of jurisdictions. [Farmers & Merchants Bank v. National Life Ins. Co., 161 Ga. 793, 131 S. E. 902, 44 A. L. R. 1184 (and note); Boisseau v. Bass, 100 Va. 207, 57 L. R. A. 380, 40 S. E. 647; Biggert v. Straub, 193 Mass. 77, 78 N. E. 770.]

In Marks v. Equitable Life Assurance Society, 96 N. Y. Sup. 551, l. c. 553, it was said that: "It seems to be settled that the assured's interest in an unmatured policy of life insurance is not such as can be reached by attachment, unless the policy has, at the time the attachment is issued, a cash surrender value." The decisions in New York are based upon their attachment statute which, among other things, requires that there must be a demand in existence subject to garnishment at the time the attachment is issued. Our statute has no such provision. In the case at bar the policy was payable to the insured's executor, administrator or assigns and had a surrender value that might be obtained by the insured at the end of the policy year after the attachment issued. We perceive no reason why this should not be construed as property sufficient to sustain an attachment. Under the holdings of our courts the right to exercise the option could be exercised by an assignee of the policy or by a pledgee thereof. It would seem the same right could be exercised by a proper person or officer of the court who might become the lawful holder thereof, for and in behalf of a judgment creditor, at least to the extent of satisfying the creditor's debt.

We are firmly convinced, however, that a life insurance policy cannot be bartered and sold as a chattel at a public sale on execution. Our statute does not contemplate that property of such character

may be sold. The creditor has no right to collect more than his debt and no person purchasing at a sale, if such were permitted, could acquire a greater right than the creditor might have. [Locke v. Bowman, 168 Mo. App. 121, 151 S. W. 468.]

If policies of insurance of this character could be sold to any person who might desire to speculate therein it would result in interminable litigation and confusion and likewise would seem to be against public policy. [Whitmore v. Lodge, 100 Mo. 36, 13 S. W. 495.]

In Huesner v. Life Insurance Company, 47 Mo. App. 336, l. c. 346, THOMPSON, J., uses this language in reference to the sale of a life insurance policy: ''Such an instrument cannot be hawked about from hand to hand like a stock certificate, all the members of the stock exchange successively acquiring an interest in having a particular man die, when the State is interested in having him live. One who is asked to purchase such an instrument as an investment or as a speculation, is met at the threshold with the rule of public policy, which forbids one man from acquiring a speculative interest in the death, not in the life, of one who is a stranger to him. And, 'if he cannot acquire such an interest in the first instance by taking out a policy of life insurance on such person, he cannot acquire it by purchasing for speculative purposes a policy which has been taken out by, or on behalf of, some one who has an insurable interest in the particular life. The most that the rule of public policy will allow him to claim, in the case of such a purchase, is a reimbursement of his advances made in purchasing the policy, assuming that he has acted in good faith.' '' While in the case at bar the pretended purchaser of this policy elected to take the cash surrender value of the policy, he might (if he owned the policy) with equal propriety have elected to take a paid-up policy of life insurance payable to himself on the death of the insured thus squarely invoking the rule of public policy mentioned in the Huesner case.

We are of the opinion that when an insurance policy is attached, as in this case, it should be placed in the hands of a receiver as provided by section 1754, Revised Statutes 1919, or, if no receiver be appointed, then the attaching officer should perform such duties and collect the amount due on the policy at the proper time and in the manner the policy provides as he would a note or other obligation. [Sec. 1758, R. S. 1919; Trigg v. Harris, 49 Mo. 176.]

The futility and injustice of permitting a public sale of a life insurance policy under an execution could not be better illustrated than in this case. The sheriff's return offered in evidence shows that he advertised and sold this policy of insurance for the paltry sum of twenty-five dollars to one W. N. George, an officer of plaintiff company. The sheriff might, with equal propriety, sell perfectly

good notes, stocks or bonds on execution sales for one-tenth or less of their value to any person who might care to gamble on his chances of collection. The statute intends that such obligations be collected by an officer of the court and applied to the creditor's debt. While it is our opinion that the surrender value of this policy constituted "property" which would sustain an attachment yet it could be collected only by a proper officer of the court, the money to be applied by the court to plaintiff's debt; that while the policy of insurance is not technically an evidence of debt, it was property of such a nature and character that it could not be sold but the proceeds could be collected by the sheriff or receiver in the same manner as a note or other evidence of debt might be collected by him, and at such time and in the manner provided by the terms of the policy. The pretended sale to George was, in our opinion, void, insofar his obtaining rights under the policy are concerned. He took no title to anything except possibly the paper upon which the policy was written which, of course, was valueless. It follows that his assignment of the policy to plaintiff cannot be upheld.

Plaintiff asserts it is entitled to recover on the second count of its petition on the theory that the policy could be applied to the payment of Mehaffie's note by reason of a provision in the note that "all moneys, bonds, or other securities or property of any nature on deposit with, or held by, or in the possession of said Industrial Loan & Investment Company of Springfield, as collateral or otherwise, to the credit or for account of the makers, endorsers, or other parties hereto, or any of them, shall be and stand applied to the payment of this note." This policy was in Mehaffie's lock box in plaintiff's office, but the record fails to show it was ever in charge of plaintiff or deposited by Mehaffie with plaintiff as collateral or otherwise to secure his indebtedness. In fact Mr. George, an officer of the plaintiff company, testified that insofar as he knew this policy was never held as collateral to this note at any time until after the sale under the attachment. We have held that plaintiff acquired no title to the policy through this sale and therefore it cannot recover on such a theory.

The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bradley, J.,* concur.