Cornell v. Insurance Co.

ADDIE CORNELL, Appellant, v. MUTUAL LIFE INSURANCE COMPANY, OF NEW YORK, Respondent.

Springfield Court of Appeals, April 23, 1914.

1. **APPELLATE PRACTICE: Trial Court's Discretion as to New Trial.** It is largely discretionary with the trial court whether or not it will grant a new trial on the ground that the verdict i against the weight of the evidence; and only when such discretion has been clearly abused should it be interfered with.

2. ———: **New Trial: Verdict Against Weight of Evidence: Elements Necessary to Conclusion.** On a motion for a new trial on the ground that there is no evidence to support the verdict, to sustain such verdict it is necessary that the evidence should not be contrary to physical fact or so impossible or improbable as to be unbelievable and it must be substantial and possess some probative force when taken in connection with all the facts and circumstances; but all reasonable inferences to be drawn from the facts proven, stand for evidence.

3. ———: ———: ———: **Trial Court's Discretion.** That a trial court in weighing the evidence for and against the verdict concludes that the evidence for the verdict is so light as to be of no consequences were there no evidence contradictory, does not prevent that court from also finding that the opposing evidence outweighs it and warrants setting aside the verdict on the ground that the evidence does not support it.

4. **NEW TRIAL: Verdict Against Weight of Evidence: Review.** In an action on an insurance policy, the evidence is reviewed and the granting of a new trial by the trial court on the ground that the verdict was against the weight of evidence is sustained.

5. ———: **Evidence Insufficient: Evidence Absent.** On a motion for a new trial, where more than one issue was involved in a single defense, the court may find that there was no evidence to support the verdict on one issue and that the finding on the other was against the weight of the evidence.

6. **LIFE INSURANCE: Policy Contract: Beneficiary's Rights Under.** While a life insurance policy, where there is no special provision to the contrary, confers a vested right upon the beneficiary which cannot be impaired without the beneficiary's consent by any act of the assured in surrendering, assigning

or pledging same, yet a valid right of the insured to surrender the policy for cash without the consent of the beneficiary may be made a part of the policy contract.

7. ————: **Wife's Right as Beneficiary: Statutory Provisions.** Sec. 6944, R. S. 1909, gives no additional rights to a wife as beneficiary under a life insurance policy, but merely protects her under and subject to the provisions of such policy.

8. ————: **Assigning or Pledging Policy: Foreclosure and Enforcement.** Where the insured assigned or pledged a life insurance policy in conformity with a provision therefor in the policy, no subsequent ratification or authorization was necessary to enable the assignee or pledgee to foreclose the pledge and enforce the assignment in payment of the secured debt.

9. ————: ————: **Contingent Interests.** Though the insured's right to surrender a 20 year life insurance policy for cash is contingent before the expiration of the 20 year period, yet an assignment thereof before such time is valid.

10. ————: ————: **Formality.** Where a life insurance policy was pledged pursuant to a provision therein contained, a written assignment was not necessary, but the mere deposit of the policy as collateral security and its retention by the pledgee with the consent of the pledgor for an existing debt, was sufficient to give the pledgee all the rights of an assignee for the same purpose.

11. ————: **Assignment of Policy: Evidence.** Action on a life insurance policy, which the company claimed had been pledged and assigned to another as collateral security and cashed by the pledgee. Evidence examined and *held* not sufficient to sustain a finding that the insured did not make a written assignment of the policy.

Appeal from Jasper County Circuit Court, Division

Number One.—*Hon. Joseph D. Perkins,* Judge. AFFIRMED.

*R. A. Mooneyham* for appellant.

(1) When an issue of fact is *controverted,* and oral testimony must be relied on to show the fact, the jury has the right to find against the testimony although it is uncontradicted. First State Bank v.

Hommon, 124 Mo. App. 177; Hunter v. Wethington, 205 Mo. 284. In old line insurance the issuance of a policy immediately confers a vested right upon and raises an irrevocable trust in favor of the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent. Blomb v. N. Y. Life Ins. Co., 197 Mo. 513; Casualty Co. v. Kaser, 169 Mo. 313; 3 Am. & Eng. Ency. of Law (2 Ed.) p. 980; Packard v. Conn. Mut. Life Ins. Co., 9 Mo. App. 469. Even though the policy expressly confers upon the insured the option of surrendering it after a certain period, still this could not be done as against the rights of the wife and children. Timayeris v. Union Mutual Life Ins. Co., 21 Fed. 223; Putnam v. N. Y. Life Ins. Co., 42 La. 739; Pilcher v. N. Y. Life Ins. Co., 33 La. 322; Ricker v. Charter Oak Life Ins Co., 27 Minn. 183; Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 143; Central Bank v. Humes, 128 N. S. 195. The beneficiary can recover on a life insurance policy notwithstanding the insured obtained loans on the policy from the insurer and then surrendered it to the insurer and obtained from it the cash surrender value thereof. Mutual Benefit Life Ins. Co. v. Willoughby, 54 South. 834; Smith v. Mutual Benefit Life Ins. Co., 173 Mo. 329.

*McReynolds & Halliburton, New & Krauthoff* and *P. E. Reeder* for respondent.

(1) Appellant did not make out a prima-facie case at the trial below. Garr-Scott & Co. v. Nelson, 166 Mo. App. 51; Nichols v. Thoadman, 112 Mo. App. 299; Jasper v. Bank, 130 Mo. App. 635; Camlin v. Schinlanberger, 64 Mo. App. 548; Nichols v. Larkin, 39 Mo. 264. All of the evidence in this case disclosed conclusively that appellant had no right of action whatsoever on the policy in question at the time suit was instituted, and that the contingent interest acquired by

her in the policy when it was issued was cut off when the Golden City Banking Company surrendered the policy for its cash value in September, 1910. Webb v. Insurance Co., 134 Mo. App. 576, 579; Leeker v. Insurance Co., 154 Mo. App. 440. Eagle v. Life Insurance Co,. 91 N. E. (Ind.) 814; Fenn v. Insurance Co., 48 La. Ann., 541; Levy v. Van Hagen, 69 Ala., 17; Mutual Life Ins. Co. v. Twyman, 92 S. W. (Ky.) 335; Pierce v. Insurance Co., 138 Mass. 160. It is the general rule that where a special reservation is made in the policy providing that an insured has the right, subject to the consent of the insurer, to change the beneficiary, that the beneficiary's rights are contingent upon this reservation in favor of the insured. Hopkins v. Insurance Co., 99 Fed. 199; Lamb v. Insurance Co., 106 Fed., 637; Denver Insurance Co. v. Crane, 73 Pac., 875. The trial court properly set aside the verdict because it was against the weight of the evidence, and his action was right also because he should have instructed the jury for the respondent because under the facts in this case only one reasonable inference could be drawn therefrom, consequently the decision became a question of law for the court, and the court should have peremptorily instructed the jury for respondent. Powell v. Missouri Pacific, 76 Mo. 84; Furber v. K. C. Bolt & Nut Co., 185 Mo. 301; Jackson v. Hardin, 83 Mo. 175; Kropp v. Brewing Co., 138 Mo. App. 49; McCreery v. Railroad Co., 221 Mo. 18; Link v. Hathaway, 143 Mo. App. 509.

STURGIS, J.—This is a suit by the widow of C. A. Cornell to collect the amount of a policy of insurance on his life. The policy was issued August 2, 1889, and provides that it becomes a paid-up policy after payment of premiums for twenty years. The insuance of the policy, the payment of all the premiums, the death of the assured, and that plaintiff is his widow and named in the policy as beneficiary, are all admit-

ted. Among the provisions of the policy are these: "Surrender. This policy may be surrendered to the Company at the end of the said first period of twenty years, and the full reserve computed by the American Table of Mortality and four per cent interest, and the surplus as defined above, will be paid therefor in cash. . . . The interest of the beneficiary in this policy is subject to the right of the insured to surrender this policy for its cash value at the expiration of 20 years from its date." This last clause was not in the regular printed form but was inserted in the policy as a special provision. The defense of the company is that the policy was assigned and pledged by the assured and beneficiary in July, 1904 (prior to the time the right of the assured to surrender same accrued), to a bank at Golden City, Missouri, to secure an indebtedness of the assured to such bank and that said bank, as the lawful holder of same, surrendered the policy to defendant for its cash value, paid to said bank on September 10, 1910, which was after the lapse of such twenty year period. The plaintiff by reply denied both the fact and validity of this assignment.

The evidence shows that C. A. Cornell, the assured, became indebted to this bank prior to July, 1904, and had deposited the policy with the bank as collateral security but without any written assignment of same. Defendant's evidence shows that at this time the bank desired a formal assignment of same in writing as security for this indebtedness and that a letter, prepared by the bank and signed by the assured, was forwarded to defendant, requesting a blank form of assignment; that defendant furnished this blank form and thereafter the same was delivered to the bank, properly filled out and purporting to be signed by the assured and beneficiary, plaintiff herein; that the note evidencing the indebtedness of the assured to the bank was renewed from time to time, until, in September, 1910, the bank informed the assured that the note must be

paid and unless otherwise provided for it would be compelled to surrender or cash in the policy at its cash value; that the assured, not being able to pay otherwise, assented to its doing so; that the policy was so surrendered for its cash value, which was applied on but was not sufficient to discharge the debt of the assured to the bank. The plaintiff testified, with some corroboration, that she had never sigend or assented to the written assignment of the policy to the bank. That became a question for the jury and was found in plaintiff's favor. The plaintiff admitted, however, that she knew the bank was holding the policy and says that when she last knew of it the bank had it. The plaintiff also claims that there is sufficient evidence to warrant the jury in finding that the insured, C. A. Cornell, did not execute the written assignment to the bank, claiming that both signatures thereto were forged.

At the close of the evidence, which related mostly to the genuineness of the signatures to the written assignment, the court refused to direct a verdict for the defendant but in effect instructed the jury to find for plaintiff, unless the jury found: "(1) that the plaintiff made an assignment of said policy to the Golden City Banking Company or consented to such assignment of said policy, or (2) that the said Charles A. Cornell did, before the expiration of the 20 year period assign said policy to the Golden City Banking Company and that after the expiration of the said twenty year period, and before his death, he authorized said bank to surrender said policy to the defendant company and take the cash surrender value thereof, and unless you so believe and find, your verdict must be for the plaintiff." The court further instructed the jury that the burden of proof was on defendant to establish these defenses or one of them. The court, however, refused to instruct the jury for defendant on the converse of these defenses, to-wit, that if the jury

found that C. A. Cornell, prior to the expiration of the 20 year period, assigned the policy to the bank as security of his indebtedness, then the bank, after such period, had a right to surrender same for its cash value, without reference to the element of his authorizing the bank to do so after such 20 year period; also, that if the assured, C. A. Cornell, pledged the policy to the bank for his indebtedness before the 20 year period, then his authorizing the bank to surrender same for its cash value after such period would be a defense. The jury found for the plaintiff. The court thereupon sustained defendant's motion for a new trial, assigning as reasons therefor: "that the verdict of the jury is against the greater weight of evidence, and for the further reason that the court erred in refusing the defendant's instruction numbered one, directing a verdict for the defendant." I. The action of the trial court in granting a new trial because the verdict is against the weight of the evidence rests largely in the discretion of that court and should only be interfered with when it is clear that discretion has been abused. [Terpenning v. Nicholls, 140 Mo. App. 505, 519, 120 S. W. 688; Van Hoose v. Machinery Co., 169 Mo. App. 54, 154 S. W. 165.] It is suggested, however, that, as the trial court granted the new trial for failure to sustain a demurrer to the evidence, this is equivalent to ruling that there is *no* evidence to sustain the verdict and that the court could not rule that there is a total lack of evidence to support the verdict and at the same time weigh the evidence to determine whether the verdict is with or against such weight. Such seems to be the ruling in Crawford v. Stock Yards Co., 215 Mo. 394, 114 S. W. 1057, as interpreted by this court in Richter v. Railroad, 145 Mo. App. 1, 7, 129 S. W. 1055, and is equivalent to ruling that a trial court cannot sustain a motion for new trial on the two grounds that there is no evidence to support the verdict and that the verdict is against the weight of the

evidence, as the first reason destroys the last. The reason given is that a court cannot say in one breath that there is no evidence at all on one side and in the next breath that it has weighed it and found the preponderance against the verdict. It seems to us, however, that this reasoning, is not altogether logical as applied to the real attitude of the trial court in determining and assigning such reasons for granting a new trial. It is often a difficult matter to determine whether there is any evidence to sustain a verdict or not. In the first place, in determining such question, the evidence must be believable, that is, not contrary to physical facts or so improbable as to stagger human credulity, and must be substantial and have some probative force when taken in connection with all the facts and circumstances. [Furber v. Bolt & Nut Co., 185 Mo. 301, 84 S. W. 890; Schaub v. Railroad, 133 Mo. App. 444, 448, 113 S. W. 1163; Strauss v. Chewing Gum Co., 134 Mo. App. 110, 114, 114 S. W. 73.] On the other hand, all reasonable inferences to be drawn from the facts proved stand for evidence. It so happens that legal minds differ as to whether there is or is not any believable evidence having some weight on the side of the verdict. Now, suppose a trial judge in weighing the evidence comes to the conclusion that what is urged as evidence sufficient to support a verdict is so equivocal or unbelievable or has so little probative force as in his judgment not to constitute sufficient evidence to sustain a verdict, but realizing that he may be mistaken and that another court or judge may hold that these matters and things do constitute sufficient evidence to take the case to a jury, he then weighs the same on that theory and has no hesitation in holding that such evidence, if sufficient to be considered evidence at all, is far outweighed by the positive, credible and abaundant evidence on the other side. The fact that in weighing the evidence for and against the verdict, the trial court concludes that the

evidence for same is so light and vapory as to be insufficient to tip the scale beam, were there no evidence on the other side, does not to my mind prevent the court from also finding that in any event the opposite evidence far outweighs it. Such was the ruling of the Supreme Court in Gould v. St. John, 207 Mo. 619, 631, 106 S. W. 23, and we do not think the court intended to overrule this case in Crawford v. Stock Yards Co., supra. It is true that when the trial court determines and assigns one valid ground for granting a new trial, it is in a sense useless and irrelevant to go further and determine and assign a further ground and in doing so he rather assumes that the first one may not be valid. No court has held, however, that only one gorund for granting a new trial should be assigned.

But in this case there is more than one issue involved in a single defense, and the court may well have found that there was no evidence to support the verdict on one issue and that the finding on the other was against the weight of the evidence. The second defense submitted by plaintiff's instruction required the jury to find for defendant: (1) That the assured assigned the policy to the bank before his right to surrender same for cash matured; and (2) that after such right matured he authorized the bank to so surrender it. The jury in finding for plaintiff found both these facts against defendant, and the trial court may have concluded that there was no evidence for plaintiff but that it was all for defendant as to the latter fact, and was strongly against plaintiff on the other fact. Suppose then the jury, in arriving at their verdict, found that the assured did execute the assignment but did not afterward authorize the surrender. The opinion of the trial court would then be that the verdict was without any evidence to support it. But, if the jury in finding for plaintiff found that the assured did not execute the assignment but did authorize the surrender, then the opinion of the trial court would be

that the verdict was merely against the weight of the evidence. We will have to rule, therefore, that in this case the trial court properly granted a new trial because the verdict was against the weight of the evidence.

II. The next point to determine is whether the law as applied to the conceded facts of the case precludes plaintiff's recovery and a judgment must be directed for the defendant. Attending then to the defenses set up in this case, we hold that, while it is true, as contended by plaintiff, that an ordinary insurance policy, absent any special provision to the contrary, confers a vested right in the beneficiary which no act of the insured in surrendering same or in assigning or pledging it can impair without the consent of the beneficiary (3 Ency. of Law (2 Ed.), 984, 984; Blum v. Insurance Co., 197 Mo. 513, 95 S. W. 317, and cases cited; U. S. Casualty Co. v. Kacer, 169 Mo. 301, 313, 69 S. W. 370), yet, we think that it is equally clear, and is so recognized in the above authorities and others cited by plaintiff (Lockwood v. Insurance Co. (Mich.), 66 N. W. 229; New York Life Ins. Co. v. Ireland (Tex.), 17 S. W. 617), that a valid right of the insured to surrender the policy for cash, or other similar provision, either absolutely or after a certain period or event, without the consent of the beneficiary, may be made a part of the policy contract. Section 6944, Revised Statutes 1909, does not interfere with this rule but merely protects the wife under and subject to the provisions of the policy. [Webb v. Insurance Co., 134 Mo. App. 576, 579, 115 S. W. 481; Leeker v. Insurance Co., 154 Mo. App. 440, 451, 134 S. W. 676; Eves v. Woodmen of the World, 153 Mo. App. 247, 256, 133 S. W. 657; Mutual Life Ins. Co. v. Twyman (Ky.), 92 S. W. 335; Eagle v. Insurance Co. (Ind.), 91 N. E. 814; Pierce v. Insurance Co., 138 Mass. 151, 160.] This principle goes to the extent that the as-sured may reserve the right to change, and thus cut

off every right of, the beneficiary without the latter's consent. [Robinson v. Insurance Co., 168 Mo. App. 259, 153 S. W. 534; Hopkins v. Insurance Co., 99 Fed. 199; Lamb v. Insurance Co., 106 Fed. 637; Denver Ins. Co. v. Crane (Colo.), 73 Pac. 875.] This theory of law seems to have been adopted at the trial by plaintiff, as shown by her instruction numbered one above mentioned, and plaintiff is bound by such theory though she argues the contrary here.

The policy contains a provision relating to its assignment and recognizes the right to do so. To make the assignment valid as against the company, the same must be in writing and a copy filed with it but that is for the company's benefit only. It would follow, therefore, as a legal consequence, that the assured could, without the consent of the beneficiary and whether she joined in the assignment or not, make a valid assignment or pledge of the policy, at least after the assured's right to surrender it for cash matured, and the exercise of such right conferred on the holder or pledgee the power to realize on the same in a lawful manner. Having once assigned or pledged the policy as collateral security, the same could not be revoked and it would take no subsequent ratification or authorization to enable the assignee or pledgee to foreclose the pledge in payment of the secured debt. [Travelers' Ins. Co. v. Healy, 49 N. Y. Supp. 29, affirmed in 164 N. Y. 607; Mutual Life Ins. Co. v. Twyman (Ky.), supra.]

Plaintiff insists, however, that while the insured's right to surrender the policy for cash was contingent only, as it was before the twenty year period had elapsed, he had then nothing to assign and his attempted assignment to the bank was invalid. The New York case, just cited, is against this contention. So is Hubbard v. Stapp, 32 Ill. App. 541, 546-7. "A sale, assignment or mortgage for a valuable consideration of chattels or other personal property to be acquired at a future time operates as an equitable assignment

and vests the equitable ownership of the articles in the purchaser or mortgagee as soon as they are acquired by the vendor or mortgagor without any further act on the part of either, and this ownership a court of equity will protect and maintain at the suit of the equitable assignee.'' [3 Pom. 2576.] ''And so it has been held that courts of equity will support assignments not only of choses in action but contingent interests and expectations, and also things which have no present actual or pretended existence, but rest in mere possibility only. [Bacon v. Bonham, 6 Stew. 616; Smithurst v. Edmunds, 1 McCart. 416; Langton v. Horton, 1 Hare, 549; Robinson v. McDonnell, 5 M. & S. 228; Apperson v. Moore, 30 Ark. 56; Edwards v. Peterson, 80 Me. 367; Hax v. Acme Plaster Co., 82 Mo. App. 447, 455. See, also, Price v. Mining Co., 83 Mo. App. 470, 475; Swinney v. Gouty, 83 Mo. App. 549; 31 Cyc. 793; Godman v. Simmons, 113 Mo. 122, 120, 20 S W. 972; 4 Cyc. 14; Goldstein v. Hort, 30 Cal. 372.]''

We think it is also the law that it is not necessary that there be an assignment of the policy in writing but that the mere deposit of the policy as collateral security and its retention by the pledgee with the consent of the pledgor as security for an existing debt gives the pledgee the rights of an assignee for the same purpose and would and did in this case give the bank authorities, after the pledgor's right matured and the debt remaining unpaid, to surrender the policy for its full cash value and apply same on such debt. In Ellis v. Kreutzinger, 27 Mo. 311, the syllabus correctly states the law thus: ''The deposit of a policy of insurance with a creditor of the assured as a security for the debt gives such creditor a lien upon the proceeds of the policy, a lien binding upon the assured, the insurer and upon all who, with notice of such lien, take an interest in the policy from the assured.'' In Key v. Insurance Co., 101 Mo. App. 334, 351, 74 S. W. 162, the court said: ''The effect of the deposit of the policy with

Heaton along with the transfer of Fugitt's note, was to give Heaton an equitable lien on the proceeds in case of loss, equal to the amount of the mortgage debt. [Ellis v. Kreutzinger, supra; Cromwell v. Ins. Co., 44 N. Y. 42; Leinkauf v. Calman, 110 N. Y. 50; Wakefield v. Martin, 3 Mass. 558.'' See, also, Bidwell v. St. Louis Dock & Ins. Co., 40 Mo. 42, 46.]

There is no question but that the bank received and held the policy as a pledge, if not by formal assignment, of the insured as collateral security for a debt of the insured. We would also hold, if necessary to a decision in this case, that plaintiff's evidence on cross-examination, declaring to say that the otherwise abundantly proved signature of her husband to the written assignment was in fact his but that she now thought it doubtful, although acknowledging that on a former trial she had testified positively that it is his signature, is no more than a failure on defendant's part to prove the signature by her and is not sufficient evidence to sustain a finding that the husband did not sign it. The defendant's evidence, that the insured directly consented to the bank's surrendering the policy for its cash value after his right to do so matured, stands uncontradicted. No question is raised but that the policy was surrendered at such time for its full cash value and it is conceded that the amount received was not sufficient to discharge the insured's indebtedness to the bank. This is a completed transaction so far as the rights of the insured, the bank and the defendant company are concerned and it makes no difference whether their rights under the assignment or pledge were legal or equitable—a question discussed in some of the cases referred to.

We hold, therefore, that the insured had a contingent interest in the policy, which matured at the end of twenty years and which could be assigned or pledged without the consent of the beneficiary; that plaintiff's execution of the written assignment or consent to the

pledge of the policy was not essential, as the bank derived no interest or right from her; that the execution of the formal assignment by the insured was not essential, but that he could and did deliver and pledge his interest in the policy to the bank as collateral security for his indebtedness to it and that the bank held the same, subject to having its rights defeated in case the insured died before the twenty year period elapsed; that after such period the bank, as pledgee or assignee, could without, and did with, the assent of the insured, in order to pay the secured indebtedness, exercise the right conferred by the policy and surrendered the policy for its cash value; that plaintiff thereby lost all her rights and interest in the policy sued on.

The trial court should, therefore, have directed a verdict for defendant. The order of the trial court setting aside the verdict and granting a new trial will be affirmed.

*Robertson, P. J.,* concurs in the result. *Farrington, J.,* concurs.