MISSOURI STATE LIFE INSURANCE COMPANY, A CORPORATION, Plaintiff, Respondent, v. CALIFORNIA STATE BANK, A ·CORPORATION, Interpleader, Appellant and GRACE KELSAY, Interpleader, Respondent.

Kansas City Court of Appeals, December 1, 1919.

LIFE INSURANCE: Beneficiary: Pledge.  Where the insurance policy gives the insured the power to assign the policy and to change the beneficiary, the latter acquires no vested rights to the proceeds of the policy and if the insured has pledged the policy to secure a debt, the named beneficiary takes subject to the rights of the pledgee.

Appeal from Moniteau County Circuit Court.—*Hon. John G. Slate,* Judge.

REVERSED AND REMANDED *(with directions.)*

*Embry & Embry* for interpleader, appellant.

*S. C. Gill* and *J. B. Gallagher* for interpleader, respondent.

BLAND, J.—On February 5, 1914, plaintiff issued a policy of life insurance in the sum of $3,000 on the life of one Benjamin F. Kelsay, in favor of his wife, Grace Kelsay, the beneficiary.  The application for said policy was taken by plaintiff's local agent, Henry Herfurth, who was at the time cashier of the interpleader, California State Bank.  Herfurth paid the first premium and took Kelsay's note therefor, and Kelsay pledged the policy to Herfurth as security for the note.  Herfurth placed this policy in a safe in said bank with some other policies left by persons with Herfurth for safe keeping, but not in a place where the bank securities were stored.  In August, 1915, Herfurth moved to Helena, Mont., and became president of a

bank there. Upon his removal one F. C. Harry became cashier of the interpleader bank. Benj. F. Kelsay died May 6, 1918, and at the time of his death there had been paid upon the policy not more than two annual premiums. The policy lapsed on February 5, 1916, for non-payment of the premiums then due but by reason of the failure of the insured to take advantage of one of three options of settlement provided for in the policy in case premiums were not paid, the insurance became automatically extended for two years and four months. The extended insurance expired on June 5, 1918. The policy contained a provision that the insured might change the beneficiary "provided the policy is not then assigned."

At the time of insured's death the bank held notes which together with accrued interest amounted to more than the face of the policy. These notes purported to signed by B. F. Kelsay and Mrs. B. F. Kelsay but Mrs. Kelsay denied having signed them. There is no question as to the genuineness of the signatures of B. F. Kelsay. This indebtedness seems to have been made several years previous to Kelsay's death but was slightly less at that time than when Herfurth left and Harry became cashier of the bank. The notes held by the bank at Kelsay's death were renewal notes. Sometime prior to Kelsay's death he pledged the policy to the bank as collateral for his indebtedness to it. There is no evidence that Grace Kelsay, the beneficiary, ever joined in or consented to the pledging of the policy to the bank. Upon the insured's death both the bank and Grace Kelsay claimed the proceeds of the policy, resulting in the insurance company filing a bill of interpleader in the circuit court of Moniteau county, Missouri, setting forth the facts and praying that defendants be required to interplead for the fund in its hand. The bank pleaded that the policy had been pledged or assigned to it to secure the insured's indebtedness to it and claimed the proceeds of the policy. Grace Kelsay claimed the proceeds by reason of having been named

as beneficiary in the policy and denied that the policy had ever been assigned or pledged to the bank. The court found the issued for the interpleader, Grace Kelsay.

Where there is no provision in the policy that the insured may change his beneficiary, the rule is "that the issue of the policy confers immediately a vested right upon, and raises an irrevocable trust in favor of, the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent." [Blum v. N. Y. Ins. Co., 197 Mo. 513, 523; Bank v. Hume, 128 U. S. 195, 206; Cornell v. Ins. Co., 179 Mo. App. 420, 429.] However, if the right to change the beneficiary is reserved in the policy, the insured may make the change without the consent of the beneficiary. [Robinson v. Ins. Co., 168 Mo. App. 259; 25 Cyc. 892; Cornell v. Ins. Co., supra.] This is because the beneficiary, in such a case, would have no vested right in the policy. A policy of life insurance may be assigned or pledged by concurrent act of the insured and beneficiary as security for debt (Ins. Co. v. Rosenheim, 56 Mo. App. 27; Charter Oak Life Ins. Co. v. Brant, 47 Mo. 419; 25 Cyc, 764); the insured without the beneficiary joining him can assign or pledge the interest he has in the policy. [Cornell v. Ins. Co., supra; 25 Cyc. 765.]

If the provision in the policy that the insured might assign it is not in itself authority for him to transfer all beneficial rights and interest of whatever character in it, regardless of the permission to change the beneficiary, then these provisions of the policy, that is, that the insured could change the beneficiary and assign the policy, conferred that right. The insured had the right to assign the policy and change the beneficiary, and the interpleader, Grace Kelsay, having no vested right in the policy at the time of its assignment, it is apparent that the insured assigned all beneficial interests that could accrue under the policy to secure his debt (Cornell Ins. Co., supra; Ellis v. Kreutzinger, 27 Mo. 311; Key v. Continental Ins. Co., 101 Mo. App. 344, 351),

subject, of course, to the full rights of the beneficiary being restored upon the fulfillment of the conditions of the pledge.

It is contended by the interpleader, Grace Kelsay, that the case of Cornell v. Ins. Co., supra, is a case similar to this one ·and authority in her favor. Under that decision it is claimed that the money is owing to her for the reason that she is the beneficiary mentioned in the policy; and that at that time neither the insured nor the bank, by virtue of being his assignee, had, nor had either of them ever acquired, the right of collecting any money from the insurance company by virtue of a provision in the policy relating to the surrender or cash value, etc. This case is to be distinguished from the Cornell case for the reason that, by inference at least, it appears from the opinion in that case that the insured there had no right to change the beneficiary in the policy. In view of the fact that the policy had no cash value until the expiration of twenty years from its date, it was held that until the expiration of that time the pledgee of the policy would have no right to collect any money under it, and should the insured die within that time the beneficiary, having a vested right in the policy by reason of the fact that the beneficiary could not be changed, would have been entitled to the proceeds of the policy. The provision in the policy in the case at bar that the beneficiary could at any time be changed "provided the policy has not been assigned," was nothing more than a recognition on the part of the insurance company of the rights of an assignee of this particular policy worded as it was. Of course, the insured could not designate a new beneficiary after he had assigned all the beneficial rights in the policy.

It is urged that there is no evidence that the policy was pledged to the bank. The only direct evidence in the record as to this fact shows that it was, and to overcome this evidence the interpleader, Grace Kelsay, resorts to inferences that she claims are to be drawn from the evidence. The bank was at some disadvantage in

proving the pledge of the policy for the reason that all the testimony of persons who made the arrangement with deceased, or had any conversation with him in reference to the matter, was objected to and excluded by the court for the reason that the other party to the contract was dead. However, the bank introduced a witness who heard the deceased say to an officer of the bank, shortly before deceased's death, that deceased had the insurance policy with the bank as collateral for the loans the bank had made him. The policy was found by an officer of the bank in a place in the vault where the bank's securities, and collateral for notes that people owed the bank, were kept, tending to show that the policy had been pledged to the bank after Herfurth left. There was an endorsement on the policy "assigned to California State Bank as security." It was made by the cashier but whether it was made before or after the deceased's death the cashier was not able to say.

It is true that Herfurth testified that the policy was given as security for the first premium and that he placed the policy in the bank's vault where some other policies, which people had left with him, for safe keeping, were kept, and not where the bank's securities were stored, nor was the policy placed with the bank securities during the time that he was with the bank. At the time Herfurth left the bank the deceased was indebted to the bank in large amounts but at that time his indebtedness was secured by personal security and no collateral. The Kelsay notes that the bank held at the time Herfurth left were renewed at various times and there is no reason why Kelsay should not have given the bank the policy as collateral security for his notes on condition that they be renewed. Herfurth testified that Kelsay owed him for this first premium at the time of Kelsay's death. Herfurth did not testify that he did not surrender the policy of insurance, which he held as collateral for his note, to the bank to be held as collateral for deceased's notes, and there is a strong inference that he must have done so for

the reason that he had left the bank more than three years prior to the time his deposition was taken, had gone to a distant State and had not taken the policy with him. In addition to this, he was making no effort to obtain possession of the policy and did not assert any right under it, even though he knew that this suit had been filed and that the interpleaders were contesting for the proceeds of the policy. There was no cross-examination of witness Herfurth. His deposition was taken and from the deposition it would appear that for some reason Herfurth was never asked if he still held the policy as collateral for his note. Of course, he was not asked as to the reason why he was not in possession of the collateral nor whether he had surrendered the same to the bank at its and Kelsay's request, to be used by it as collateral security for Kelsay's indebtedness.

We think that all the evidence goes to show that the policy was pledged to the bank as collateral by Kelsay to be held by it as collateral for his loans, and that there is no substantial evidence it was not so pledged at the time of his death.

The judgment is reversed and the cause remanded with directions to the court to render judgment in favor of the interpleader, California State Bank. All concur.