342

EMILY KING PARKER AND ST. LOUIS TRUST COMPANY, A CORPORA-
TION, TRUSTEES, RESIDUARY LEGATEES UNDER THE WILL OF
HERBERT L. PARKER, DECEASED, AND TRANSFEREES, ESTATE OF
HERBERT L. PARKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 53320. Promulgated April 10, 1934.

*Abraham Lowenhaupt, Esq.*, and *Stanley S. Waite, Esq.*, for the petitioners.

*J. H. Yeatman, Esq.*, for the respondent.

344

**OPINION.**

MATTHEWS: In the stipulation of facts filed by the parties to this proceeding it is agreed that if there is any deficiency in estate tax

due from the estate of Herbert L. Parker not barred by the statute of limitations, the petitioners, who were appointed trustees of the estate under the decedent's will, are liable for the tax as transferees under section 316 of the Revenue Act of 1926. We shall first consider the question whether the proposed deficiency is barred by the statute of limitations.

The decedent died on December 15, 1924, and the estate tax return was filed on December 15, 1925, by the present petitioners in their capacity of executors. Section 310 (a) of the Revenue Act of 1926 provides for assessment of estate taxes within three years after the return was filed and prohibits any proceeding in court without assessment for the collection of such taxes after the expiration of this three-year period. Assessment against the transferees of the estate, under section 316, must be made within one year after the expiration of the period of limitation for assessment against the executors. Thus, if the running of the statute of limitations had not been suspended, the three-year period of limitation for assessment against the executors and the one-year extension as to the transferees would have expired on December 15, 1929, which date is after the enactment of the Revenue Act of 1928. Section 402 of the Revenue Act of 1928, which is specifically made to apply in all cases where the period of limitation has not expired prior to the enactment of the 1928 Act, amends section 310 (b) of the Revenue Act of 1926 to read as follows:

The running of the statute of limitations provided in this section or in section 311 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 308) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for 60 days thereafter.

A notice of deficiency was addressed to the petitioners herein as " executors " on July 5, 1927, and a petition, Docket No. 30630, was filed with the Board on August 22, 1927, by these petitioners in their then capacity of " trustees." In the hearing before the Board it was developed that Emily King Parker and the St. Louis Union Trust Co. had been discharged as executors by the Probate Court on June 23, 1926, and had thereafter, in accordance with the provisions of the decedent's will, turned over the estate to themselves as trustees. It was held that since the executors and the trustees of the estate were separate and distinct legal entities, the Board had no jurisdiction of a petition filed by the latter for the redetermination of a deficiency determined against the former. That proceeding was accordingly dismissed on October 20, 1930, for lack of jurisdiction,

21 B.T.A. 76. The notice of deficiency in the instant proceeding was mailed on February 16, 1931.

In the view we take of the case it is not necessary to discuss the point that the first petition was filed in the names of the petitioners as trustees, although the notice of deficiency dated July 5, 1927, was addressed to them as executors, and in the instant proceeding they describe themselves as trustees and admit their liability as transferees of the property of the deceased taxpayer. The deficiency in controversy was asserted against the estate of the deceased taxpayer. It was clearly a " proceeding in respect of the deficiency " which was placed on the docket of the Board on August 22, 1927, and that proceeding suspended the running of the statute of limitations in accordance with the provisions of section 402, quoted above.

The proceeding in Docket No. 30630 was pending before the Board for more than three years, and when the period of suspension is added to the date the period of limitation would have expired if no appeal had been taken to the Board, which was December 15, 1929, it is clear that the notice of deficiency involved in the instant proceeding, dated February 16, 1931, was forwarded well within the extended period. We hold, therefore, that the deficiency asserted herein is not barred by the statute of limitations.

The position which this Board takes with respect to the suspension of the running of the statute after the filing of a petition with the Board, where the proceeding is later dismissed by the Board for lack of jurisdiction, has been approved by the Circuit Court of Appeals for the Second Circuit in its opinion dated December 11, 1933, in the case of *American Equitable Assurance Co. of New York* v. *Helvering*, 68 Fed. (2d) 46; affirming 27 B.T.A. 247. This case involved a deficiency in income tax, but the provisions of the statute with respect to the suspension of the running of the statute of limitations are the same as to deficiencies in income and estate taxes. The court held that the mere placing on the docket of the Board of a proceeding in respect of a proposed deficiency suspends the running of the statute of limitations with respect to the deficiency, even though the Board subsequently dismisses the proceeding for want of jurisdiction. The court said:

* * * At any rate, a proceeding had been commenced which required the Board of Tax Appeals to make a decision though not necessarily on the merits. Because the effect of the passage of time would be the same whether the Board made its decision on the merits or on some other ground, if the period stated in the statute of limitations meantime expired, it is reasonable to believe that Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not. In other words, the time after such a proceeding was placed on the docket was not to be added to what had gone by since the return had been filed until the Board disposed of the

matter in some way and sixty days had passed thereafter in which further action could be taken. Certainly, the words Congress used have this meaning literally and we are disposed to believe that such is their intended effect.

We pass now to the sole question raised on the merits, whether the proceeds of four certain insurance policies should have been included in decedent's gross estate. The petitioners in the stipulation have conceded the correctness of respondent's inclusion of real and other property in the gross estate in the amounts of $20,000 and $1,400; and also the inclusion of the proceeds of other insurance policies in an aggregate amount of $162,192.23 over and above the $40,000 exemption allowed by the statute. The applicable provisions of the 1924 Revenue Act are set out in the margin.[1]

Under the express provisions of the statute the amounts receivable by the beneficiary under the four policies here in question are required to be included in the gross estate.

So was the value of the trust estates before the Supreme Court in *Nichols* v. *Coolidge*, 274 U.S. 531, and in *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339, under the terms of the statutes there applicable.

In *Nichols* v. *Coolidge*, *supra*, it was held that property transferred in trust, long prior to the passage of any estate tax act, and not in contemplation of death, under which the beneficiary took a vested interest, could not be subjected to the estate tax merely because the conveyance took effect in possession after death.

In *Reinecke* v. *Northern Trust Co.*, *supra*, the Court ruled that the five trusts created in 1919, where the grantor reserved the right to modify the trusts with the consent of the beneficiary, were not subject to estate tax, but that the two trusts created in 1903 and 1910, where the grantor alone reserved the right to change the trust, were subject to the estate tax.

On the same day that the *Reinecke* v. *Northern Trust Co.* decision was rendered, the Court in *Chase Nat. Bank* v. *United States*, 278 U.S. 327, following the principle applied in the *Northern Trust Co.* case, held that the proceeds of life insurance policies in which the decedent had until the moment of death the right to change the beneficiary were includable in gross estate, such right giving the insured the power to control the policies and their proceeds until death.

Under the authority of these decisions petitioners submit that the question for determination is whether the insured until his death

---

[1] Sec. 302. (g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life;

(h) Subdivisions (b), (c), (d), (e), (f) and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

possessed any of the powers enumerated in the *Chase Nat. Bank* case, the termination of which by death alone constituted a transfer. It is contended that in the four policies here in question decedent had none of the powers enumerated in the *Chase Nat. Bank* case at his death and therefore that no taxable interest was thereby transferred.

The New York Life policy became paid up on March 7, 1913, and was continued. No loans on the policy could be obtained or continued after the end of the accumulation period, March 7, 1913, and after that date the insured could not surrender the policy. It became a paid-up policy for $10,000 to be paid upon the death of the insured to the wife of the insured, the beneficiary, or in the event of her prior death, to the executors, administrators, or assigns of the insured.

The provision in the policy that in case of death of beneficiary prior to that of insured, the insurance would be payable to the executors, administrators, or assigns of the insured, is not sufficient to prevent the vesting in the beneficiary from being complete. No act of the insured could prevent the beneficiary from receiving the full $10,000 of insurance on his death. Her interest could be defeated only by her death prior to that of the insured. In *James B. Duke Estate*, 23 B.T.A. 1104, in which the settlor of a trust provided in the trust deed that if the beneficiary should predecease him the trust *res* should revert to him, we said that " such possibility of reversion did not prevent the gift from being complete ", citing *McCormick* v. *Commissioner*, 283 U.S. 784. Our decision in the *Duke* case was affirmed by the Circuit Court of Appeals, 62 Fed. (2d) 1057, and affirmed per curiam by the Supreme Court (divided), 290 U.S. 591.

After March 7, 1913, the only interest which the insured had in the policy was in the dividends to be apportioned to it. We do not know how the insured elected to take the dividends accumulated during the accumulation period, but the endorsement on the policy dated January 28, 1913, a little over a month before the end of the accumulation period, provided that any profits after the accumulation period were to be apportioned at the end of every one year instead of at the end of every five years as the policy provided, and at the end of each year the insured had the option of taking such profits in one of three ways; but if the insured did not elect within three months of the notice requiring election, the profits would be applied to the purchase of paid-up additions.

Presumably the excess over the face of the policy, $105.36, was the paid-up addition purchased with the profits accrued in the year of decedent's death, which had not been paid to him in cash. As decedent had control over such profits until his death, the paid-up

addition which such profits purchased, $105.36, should be included in the gross estate. *Chase Nat. Bank* v. *United States, supra.* But since the insured had no power the exercise of which could affect the beneficiary's right to the full amount of the insurance, $10,000, the proceeds of the policy in such amount are not includable in decedent's gross estate. *Levy's Estate* v. *Commissioner,* 65 Fed. (2d) 412.

We come now to the three Union Central Life Insurance policies which were taken out in 1903. Although the parties stipulated that the last premiums due on the three Union Central policies were paid in 1922, and that after that date the policies became paid-up policies, we have not found such to be the fact. The policies, photostatic copies of which were received in evidence, show that the premiums were to continue for the life of the insured and there is no provision in the policies providing that they will be paid up in 20 years. In the application for the policies signed by the insured. which is attached to and made a part of the policies, there is written in the space after " Kind of Policy ", " Ord. Life Bond 20 Yr. Installment Participating." Each policy is described on the back as " Participating Life 20 Inst. Bond." They do not purport to be 20-payment life policies.

The policies do provide for paid-up insurance in case of default in payment of premiums. Under this provision, after the twentieth year, if no further premiums had been paid, the policies would have been continued in force as paid-up nonparticipating term policies for 8 years and 136 days; but if the death of the insured occurred within 3 years from default of premium there would have been deducted from the amounts payable under the policies a sum equal to the regular premiums with interest, which would have been paid had the original policies been kept in force. The insured died 2½ years after the 1922 premiums were paid. The evidence does not show that any amount was deducted from the amount payable to the beneficiary on the death of decedent, hence we assume that the insured continued to pay the premiums until his death.

In each of the three Union Central Life insurance policies the insured had the right to surrender the policy on July 15, 1923, and receive its reserve value in cash and the reserve value of any reversionary additions less any indebtedness to the company. That is the only date on which the insured did have the right to surrender the policy. Cash loans could be made on the policy after the third year in the amounts designated in the table of loan values. The provision of the policy permitting the loan does not state that the loan will be made to the insured, but that " upon legal assignment of the policy to the company as collateral security ", the loan will be made. As the beneficiary was required to sign, and did sign,

the application for the insurance, it would appear that no legal assignment could be made of the policy without the joining in of the beneficiary. But, aside from this, and whether the insurance policies are to be construed as Ohio contracts, as the policies provide, or as made in Missouri, where the application for the insurance was made, the insured lived, and the policies were delivered, the rule applied by the courts in both Ohio and Missouri is that the insured can not borrow on life insurance policies in which there is no right to change the beneficiary without the consent of the beneficiary. The rule in Missouri is thus stated in *Missouri State Life Ins. Co.* v. *California State Bank*, 202 Mo. App. 347; 216 S.W. 785:

> Where there is no provision in the policy that the insured may change his beneficiary, the rule is ".that the issue of the policy confers immediately a vested right upon, and raises an irrevocable trust in favor of, the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent." *Blum* v. *N.Y. Ins. Co.*, 197 Mo. 513, 523, 95 S.W. 317, 319 (8 L.R.A. [N.S.] 923, 7 Ann. Cas. 1021) ; *Bank* v. *Hume*, 128 U.S. 195, 206; *Cornell* v. *Insurance Co.*, 179 Mo. App. 420, 429, 165 S.W. 858. * * *

And a rule to the same effect had been announced in *Union Central Life Ins. Co.* v. *Buxer*, 62 Ohio St. 385; 57 N.E. 66. The insured, therefore, could not borrow on the three Union Central Life policies without the consent of the beneficiary.

These policies, like the New York Life policy, also provided that in case of the wife's death prior to that of the insured, the insurance was payable to the executors of the insured. What was said with respect to a similar provision of the New York Life policy also applies here and this provision did not prevent the beneficiary from having an irrevocable vested interest in the policies.

Under each of these policies the insured at the time of his death had no rights in the policy which could be exercised without the consent of the beneficiary. The beneficiary's right to the full face amount of the policies was not affected by his death, for there was no possibility of the exercise by the insured of any power which might have diminished the amounts receivable by the beneficiary. The proceeds of the three Union Central Life policies should not be included in the gross estate of the decedent. *Nichols* v. *Coolidge, supra; Reinecke* v. *Northern Trust Co., supra; Levy's Estate* v. *Commissioner, supra.*

Reviewed by the Board.

*Judgment will be entered under Rule 50.*