### COCKRILL et al. v. SOUTHWESTERN LIFE INS. CO.

No. 8390.

Court of Civil Appeals of Texas. Austin.

March 3, 1937.

Rehearing Denied March 31, 1937.

Eskridge & Groce, of San Antonio, for appellant Flatonia State Bank.

W. B. Green, of Nixon, and Moss & Moss, of La Grange, for appellant Goldie Cockrill.

Hamilton, Lipscomb & Wood, of Dallas, for appellee.

BAUGH, Justice.

This case arose as follows: E. E. Cockrill in 1924 held a paid-up life insurance policy in appellee company for $10,010, in which Goldie Cockrill, his wife, was named beneficiary. In January, 1924, he executed his note to said company for borrowed money in the sum of $3,930 and assigned said policy to the Insurance Company as security therefor. On March 4, 1927, he executed to the Flatonia State Bank his note for $5,500, due in three years, and made an additional assignment of said policy to the bank as security, subject to the one made to the Insurance Company. He made no payments of principal or interest on either note. On March 2, 1934, two days before the note to the bank would became barred by limitation, the bank sued Cockrill and wife on his note to it, impleaded the Insurance Company, set up the two assignments of the policy, asked judgment against Cockrill for its debt and generally for whatever relief in law and in equity it might be entitled to with reference to said insurance policy. Cockrill, who was then in a hospital in San Antonio in serious condition, and his wife were served with citation. The Insurance Company was not served, but on April 13, 1934, the attorney for the bank sent to the Insurance Company a copy of its petition against Cockrill, with request that it waive service. The letter of transmittal contained the following:

"The primary object of this suit is to prevent limitation barring the cause of action of the Flatonia State Bank against E. E. Cockrill. As a matter of secondary interest the Flatonia State Bank wishes to bring about a liquidation of any equities it might have in the policy described in the petition.

"The Bank will not contest the priority of the assignment of this policy by Cockrill to you. However, since interest charges on your loan to E. E. Cockrill are continually reducing the margin between the total amount of your claim and the cash value of the policy, the Bank wishes to cash this policy if at all possible. I think you will realize that the Bank will readily consider any suggestion that may lead to a settlement."

On April 30, 1934, the Insurance Company answered in that suit, tendered into court $874.82, being the difference between the cash surrender value of the policy on that date and the sum due it by Cockrill on his note to the company, and asked that it be allowed an attorney's fee of $200 out of this amount, and that it be discharged from further liability under the policy.

Meantime on July 22, 1934, and before any trial was had, E. E. Cockrill died intestate. Thereupon Goldie Cockrill and the bank demanded payment from the Insurance Company of full amount of the policy, less Cockrill's debt to the company, and upon refusal of the Insurance Company to pay same, filed suit on the policy. The two suits were consolidated and the parties ordered to replead. The bank thereupon sought only to have its debt established against Cockrill and sought to recover against the Insurance Company the face value of the policy under the assignment to it, on the ground that the policy had by Cockrill's death matured, and that Cockrill was at the time of his death insolvent. The pleadings of Goldie Cockrill, beneficiary in the policy, will be noted later in a discussion of her contentions on this appeal.

Trial was to the court without a jury, and at the close of the evidence judgment rendered that neither the bank nor Goldie Cockrill recover anything against the Insurance Company; that the $874.82, less $150 attorney's fees allowed the Insurance Company, tendered into court by the company, be paid to the bank; and that further liability of the Insurance Company under said policy be discharged. From this judgment Goldie Cockrill and the bank prosecute separate appeals.

As between the Flatonia State Bank and the Insurance Company, the controlling question presented is whether the bank, under the assignment of the policy to it as security for Cockrill's debt to said bank, had the right or authority, without the consent of either the insured or the beneficiary, to demand and accept the cash surrender value of said policy, and thus cancel the policy. The trial court held that by the filing of its suit the bank elected to do so; though the bank contended that such was not its purpose nor undertaking, but that it merely undertook to establish its rights with reference to said policy, whatever those rights were.

In the original suit filed by the bank against the Cockrills to which the Insurance Company was made a party as claim-

ing a superior interest to that of the bank, the bank nowhere alleged that it had the express right to surrender the policy under the assignment to it at its cash surrender value, nor did it expressly pray for any such relief. At that time the cash surrender value was $6,526 and Cockrill's indebtedness to the Insurance Company then amounted to $5,820.95. If the policy matured by death of the insured, who was then in a critical condition and not expected to recover, its value would, of course, have been the face of the policy, or $10,010.

No question is raised as to the validity of either of the assignments in question. Neither the cash value of the policy, nor the face value in case of death of the insured, was sufficient to fully discharge both debts of the insured to secure which the policy had been assigned. Nor does the bank controvert the superior claim of the Insurance Company. The policy made the insured's wife his beneficiary in case she survived him, otherwise such insurance was payable to his executors, administrators, and assigns. The policy also provided that he could change the beneficiary at will, upon notice to the company; and provided that "upon due surrender of this contract the company will pay the amount of cash value, if any, specified in the table of cash values, etc., less any indebtedness due the company." We find no provisions in the policy which make the option to collect the cash surrender value of said policy personal to the insured; nor vesting in the beneficiary any irrevocable right to such insurance; nor limiting the power of the insured to assign the policy or surrender it and receive its cash surrender value at any time he chose.

Under these circumstances, so far as we have been able to find upon an exhaustive research of the authorities, the uniform rule seems to be that the assignee of such policy as security for the debt of the insured, after the maturity of the insured's debt and his default in payment thereof, has, under such general assignment, the authority to surrender the policy, collect the cash surrender value thereof, and apply same to the payment of his debt. In Bank of Idana v. Illinois Life Ins. Co., 135 Kan. 129, 9 P.(2d) 629, 631, a case involving the identical question, the Supreme Court of Kansas held: "And the execution of the assignment and its delivery to the bank, together with the simultaneous delivery of the policy, was a sufficient grant of power to the bank to exercise the option of drawing down the surrender and investment values of the policy." In Cornell v. Mutual Life Ins. Co., 179 Mo.App. 420, 165 S.W. 858, 862, the Missouri Court of Appeals held that the pledgee of a policy as security for the debt of the insured had such right after default even without a written assignment of such policy. In Mutual Benefit Life Ins. Co. v. First Nat. Bank, 160 Ky. 538, 169 S.W. 1028, 1034, the Kentucky Court of Appeals said: "The policy merely provides for a cash value to be paid by the company on a surrender of the policy fully receipted. This makes the privilege of surrendering the policy for cash one which may be exercised by a creditor who received the policy by assignment from the insured as security for his debt." This rule is announced also in 37 C.J. § 160, p. 444; Couch's Cyclopedia of Ins. Law, vol. 6, § 1458z, p. 5266. The exact question seems never to have been passed upon in Texas. The case most nearly in point, and urged by appellee as controlling here, is Shoemaker v. Harrington (Tex. Civ.App.) 30 S.W.(2d) 539; Shoemaker v. American Nat. Ins. Co. (Tex.Com.App.) 48 S.W.(2d) 612. In that case, however, the policyholder had designated his wife as beneficiary. They were subsequently divorced, but prior to the divorce decree a settlement agreement was made wherein the husband assigned the policy to his beneficiary. The court's holding in that case is predicated upon the proposition that because of the facts and the consideration for the assignment, the insured had himself in making the assignment elected to take the cash value of the policy, and had thereby exercised his option, which ripened into a chose in action against the company, and which he could assign. Consequently the right of a pledgee of the policy to exercise such option was not involved.

Nor does the reservation in the assignment to the bank to the insured of all increments to said policy militate against the rule above announced. Absent such reservation, such increments would have passed to the creditor under the assignment. Northwestern Mut. Life. Ins. Co. v. Barker's Ex'x, 241 Ky. 490, 44 S.W. (2d) 292; Couch's Cyc. of Ins. Law, vol. 6, p. 5262. Having made only this reservation in such assignment, it will be presumed that such was the only limitation intended.

The policy already being in possession of the company, it was not of course necessary for the bank to have possession of it and deliver it to the company. The company already had notice of the second assignment made by the insured to the bank; and if the bank had the right to exercise the option to demand the cash value of the policy, a proper notice to the company to that effect was all that was required. And when that notice was given, the rights of the parties became fixed. We think it was immaterial whether the filing of the suit by the bank constituted, as found by the trial court, an election by the bank to demand the cash value of the policy or not. The letter of its attorney, dated April 13, 1934, transmitting to the Insurance Company a copy of its petition, would constitute such an election, even if no suit had been filed. And the bank could, without such suit, still have applied such proceeds on the insured's note to it, even though such debt were then subject to a plea of limitation. Harde v. Germania Life Ins. Co. (Tex.Civ.App.) 153 S.W. 666. The rights of the parties were fixed at the time such election was made, and the subsequent death of the insured did not change them. Pacific States Life Ins. Co. v. Bryce (C.C.A.) 67 F.(2d) 710, 91 A.L.R. 1446, and annotations. The bank having made such election, and the Insurance Company, which had no right to reject it, having accepted it and tendered into court the amount due thereunder, it cannot thereafter be heard to deny or repudiate such election because of the death of the insured, and collect the death benefit of the policy merely because a larger sum would then become due and payable to it under the policy and the assignment.

Having reserved in the policy the right to change his beneficiary, the insured under the authorities clearly had the right to assign the policy as security for his debts without the consent of the beneficiary. But in the instant case the beneficiary joined him in the assignment and consequently is in no position to attack the rights vested in the assignee under it. Fuos v. Dietrich (Tex.Civ.App.) 101 S.W. 291; McNeil v. Chinn, 45 Tex.Civ.App. 551, 101 S.W. 465; Farracy v. Perry (Tex. Civ.App.) 12 S.W.(2d) 651; 24 Tex.Jur. § 73, p. 773.

In a separate appeal by Mrs. Cockrill, it is urged that the assignment of the policy was merely as security for the insured's debt to the bank; that this debt was barred by limitation at the time all the parties were required to, and did, replead in the consolidated cases; that the bank dismissed its suit on the note against insured which released the security therefor; and that consequently she, as beneficiary, and not the bank, was entitled to recover whatever was due on said policy after deducting the amount due the Insurance Company. She relies particularly on the case of Washington Life Ins. Co. v. Gooding, 19 Tex.Civ.App. 490, 49 S.W. 123, where it was held that the debt which the policy was assigned to secure being barred at the time suit thereon was filed, the beneficiary was entitled to plead limitation thereto, and recover as beneficiary in the policy. But in the instant case suit was filed on the note before it became barred. Nor did the consolidation of the two suits herein constitute a new cause of action. The same parties and the same rights were involved as in the first instance. Nor did the pleading of the bank that Cockrill and his estate were wholly insolvent, and that no personal judgment was sought against it for that reason, constitute a dismissal of its cause of action on its note. It did ask that its debt be established by judgment as a basis for collecting its collateral security—the policy assigned to and held by it. Of course, Mrs. Cockrill was not personally liable on the note of her husband to the bank, and no personal judgment would lie against her on it. But she was a party to the suit, had joined her husband in the assignment, and the debt which it secured not being barred by limitation, she cannot attack the assignment. Consequently the court did not err in denying her any recovery on the policy.

Finding no error in the record, the judgment of the trial court is affirmed.